**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49689**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: January 3, 2024** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| MATTHEW DAVID BERRY, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Bradly S. Ford, District Judge. Hon. Derrick O'Neil, District Judge.

Judgment of conviction and order denying motion to suppress, <u>affirmed</u>.

Eric R. Lehtinen, Interim State Appellate Public Defender; Kiley A. Heffner, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kacey L. Jones Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Matthew David Berry appeals from the judgment of conviction entered pursuant to a conditional guilty plea to trafficking in heroin. Berry argues the district court erred when it denied his motion to suppress evidence obtained through an officer's search of Berry's front pants pockets. Because the search was lawful, the district court did not err when it denied Berry's motion to suppress. The district court's judgment of conviction and order denying Berry's motion to suppress are affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Based on a call to 911, Officer Fiddler responded to an address. While en route, Officer Fiddler learned from 911 dispatch that the calling party was experiencing labored breathing, moaning, groaning, and was unable to confirm the reason for calling. After arriving, Officer

Fiddler and an assisting officer knocked on the door but received no response. The officers confirmed with 911 dispatch that the caller could still be heard exhibiting labored breathing, so Officer Fiddler kicked the door open to render assistance. Officers entered the home and observed a male and a female collapsed on each other in a bathroom in what appeared to be a drug overdose situation. After separating the two people, Officer Fiddler began trying to awaken the unconscious and unresponsive male, later identified as Berry.

Shortly thereafter, emergency medical personnel (EMS) arrived and began performing resuscitation and other medical procedures on Berry. In order to transport Berry to a hospital, EMS strapped Berry to a backboard with a strap across his chest and a strap across each arm at approximately the elbow. Eventually, Berry regained consciousness, began making noises, and repeatedly reached for his pants pocket. Officer Fiddler and EMS instructed Berry not to reach into his pocket. Because Officer Fiddler believed syringes had been used to inject drugs, but he had not seen any syringes, and because Berry kept reaching for his pocket, Officer Fiddler patted the outside of Berry's pants to identify any possible weapons, including a syringe. During the exterior frisk of Berry's pockets, Officer Fiddler felt "a small clump, like a baggy" in Berry's left pocket which he believed to be associated with drug paraphernalia. Officer Fiddler then reached inside Berry's left front pants pocket, pulled out the contents, and identified an "empty baggy." Officer Fiddler then reached into Berry's right pocket and retrieved a plastic baggy with a dark brown substance.

The State charged Berry with trafficking in heroin, Idaho Code § 37-2732B(a)(6)(B), based on the substances pulled from his pockets, and felony injury to child, I.C. § 18-1501(1), based on the presence of a young child in the apartment at the time law enforcement arrived. Berry filed a motion to suppress, arguing the contents of his pockets were discovered during an unlawful frisk and search because Officer Fiddler did not have a reasonable belief that Berry was armed and dangerous. After a hearing, the district court denied the motion. The district court concluded that the exterior pat down of Berry was a proper *Terry*[1] frisk. The district court further found the subsequent search of Berry's pockets satisfied the plain-touch, or plain-feel, doctrine because Officer Fiddler testified that while he felt no weapons in Berry's pockets, he felt baggies in both

---

[1]     *Terry v. Ohio*, 392 U.S. 1 (1968).

2

pockets and a hard lumpy substance in one of those pockets. As a result, it was reasonable for Officer Fiddler, based on his training and experience, to identify the objects he felt during an exterior pat down as contraband closely associated with illegal drug use.

Pursuant to a plea agreement, Berry entered a conditional guilty plea to the charge of trafficking of heroin, reserving his right to appeal the order denying the motion to suppress, and the State dismissed the felony injury to child charge. Berry timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Berry argues the district court erred in denying his motion to suppress. Specifically, Berry contends Officer Fiddler's search exceeded the scope of a permissible *Terry* frisk and was not permissible under the plain-feel doctrine; thus, violated the Fourth Amendment.[2] The State responds that the district court properly found Officer Fiddler had a reasonable belief that Berry was armed and dangerous to warrant the initial external frisk and the plain-feel doctrine justified the officer entering and removing the contents of Berry's pockets. We hold that the removal of

---

[2]    Although Berry contends that both the state and federal constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Berry's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

controlled substances from Berry's front pants pockets did not violate the Fourth Amendment. As such, Berry has failed to show error in the district court's denial of his motion to suppress.

## A. *Terry* frisk

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999). In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court created a stop-and-frisk exception to the Fourth Amendment warrant requirement. The stop and the frisk constitute two independent actions, each requiring a distinct and separate justification. *State v. Babb*, 133 Idaho 890, 892, 994 P.2d 633, 635 (Ct. App. 2000); *State v. Fleenor*, 133 Idaho 552, 556, 989 P.2d 784, 788 (Ct. App. 1999).

The stop is justified if there is a reasonable and articulable suspicion that the individual has committed or is about to commit a crime. *Florida v. Royer*, 460 U.S. 491, 498 (1983); *Terry*, 392 U.S. at 30; *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998); *Ferreira*, 133 Idaho at 479, 988 P.2d at 705. However, merely because there are reasonable grounds to justify a lawful investigatory stop, such grounds do not automatically justify a frisk for weapons. *Babb*, 133 Idaho at 892, 994 P.2d at 635. An officer may frisk an individual if the officer can point to specific and articulable facts that would lead a reasonably prudent person to believe that the individual with whom the officer is dealing may be armed and presently dangerous and nothing in the initial stages of the encounter serves to dispel this belief. *Terry*, 392 U.S. at 27; *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787. In our analysis of a frisk, we look to the facts known to the officer on the scene and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances. *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787.

While an officer need not possess absolute certainty that an individual is armed and dangerous, an inchoate and unparticularized suspicion or hunch is inadequate to justify a frisk. *State v. Bishop*, 146 Idaho 804, 819, 203 P.3d 1203, 1218 (2009). Several factors influence

4

whether a reasonable person in the officer's position would believe that a particular individual was armed and dangerous. These factors include:

> whether there were any bulges in the suspect's clothing that resembled a weapon; whether the encounter took place late at night or in a high crime area; and whether the individual made threatening or furtive movements, indicated that he or she possessed a weapon, appeared nervous or agitated, appeared to be under the influence of alcohol or illegal drugs, was unwilling to cooperate, or had a reputation for being dangerous.

*Bishop*, 146 Idaho at 819, 203 P.3d at 1218. While this list of factors is not exhaustive, any single factor could be sufficient to justify a *Terry* frisk under the totality of the circumstances standard. *Bishop*, 146 Idaho at 819, 203 P.3d at 1218; *see State v. Saldivar*, 165 Idaho 388, 392, 446 P.3d 446, 450 (2019).

Berry argues Officer Fiddler did not have a reasonable belief that Berry was armed and dangerous so as to justify a *Terry* frisk. We disagree, as Officer Fiddler connected several of the above factors to the presence of a weapon and a risk to his safety. In this case, the district court found the facts known to Officer Fiddler at the time he patted down Berry were: (1) Berry had overdosed on a controlled substance; (2) the drugs had likely been injected via a syringe but no syringe was observable; (3) Berry was initially unresponsive, but after medical treatment he regained consciousness; (4) upon regaining consciousness, Berry was incoherent but immediately and repeatedly attempted to reach his hand into his front pocket; (5) even while strapped to a backboard, Berry had range of motion in his arms at the elbow and could reach his pockets; (6) Berry kept reaching for his pants pocket despite being repeatedly ordered by EMS and law enforcement not to do so; (7) because Officer Fiddler did not find or observe a syringe, he believed that Berry could have the syringe on his person; and (8) Officer Fiddler considered the syringe a weapon. These factual findings are not challenged on appeal.

Officer Fiddler also testified that, in his training and experience, people are unpredictable when waking up from an overdose. Here, Berry was under the influence of a narcotic, incoherent, uncooperative, and engaging in behavior that was uncommon in Officer Fiddler's experience. Thus, based on the facts and reasonable inferences drawn therefrom, the district court did not err in concluding it was objectively reasonable for Officer Fiddler to believe Berry was possibly armed and dangerous. Thus, the exterior frisk of Berry's pockets was lawful under *Terry*.

**B.       Plain-Feel Exception**

Berry also argues on appeal that the district court erred in finding the search inside his pockets was justified under the plain-touch or plain-feel exception because Officer Fiddler did not feel an object during the frisk that he immediately recognized as contraband.  The State argues that during the frisk, Officer Fiddler identified a baggy and a lumpy hard object which led to the conclusion that the item was drug paraphernalia because he was responding to a drug overdose.

The plain-touch or plain-feel exception to the warrant requirement applies when, during the course of a *Terry* frisk for weapons, an officer feels an object whose contour or mass makes its identity as contraband immediately apparent.  *State v. Doe*, 145 Idaho 980, 984, 188 P.3d 922, 926 (Ct. App. 2008).  If the object's identity as contraband is immediately apparent, an officer is justified in conducting a warrantless seizure of that object by removing the object from a suspect's pocket on the basis of probable cause.  *Id.*

In this case, the district court found that during the initial, constitutional *Terry* frisk, Officer Fiddler specifically identified baggies in each of Berry's front pants pockets; one of the baggies contained a hard, lumpy substance; and, based on his training and experience, Officer Fiddler could reasonably believe the items he felt in Berry's pockets were closely associated with illegal drug use.  On appeal, Berry does not challenge these factual findings; instead, he argues these facts do not establish that Officer Fiddler reasonably believed the items he felt were contraband.  We disagree.

When Officer Fiddler frisked Berry, he felt a baggy in one pocket and a lumpy substance in the other pocket.  Officer Fiddler knew Berry had overdosed on drugs, drugs are typically carried in baggies, and what he felt in Berry's pockets was consistent with feeling like baggies and/or drugs.  The district court's factual findings, which are unchallenged, support its conclusion that Officer Fiddler lawfully searched Berry's pants pockets after it was immediately apparent, based on plain-feel, that the pockets contained contraband.  Berry has failed to show the district court erred in denying his motion to suppress the evidence found in his pockets.

6

## IV.

## CONCLUSION

Because the initial frisk was a lawful *Terry* frisk and the subsequent search inside the pockets was justified under the plain-feel doctrine, the denial of Berry's motion to suppress and judgment of conviction are affirmed.

Chief Judge GRATTON and Judge LORELLO **CONCUR**.