**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 43299**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2016 Opinion No. 44** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: June 24, 2016** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **MICHAEL SEAN HARRISON,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Lansing L. Haynes, District Judge.

Order denying motion to suppress, <u>reversed</u>; judgment of conviction for possession of a controlled substance, <u>vacated</u>; <u>case</u> <u>remanded</u>.

Sara B. Thomas, State Appellate Public Defender; Maya P. Waldron, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Ted S. Tollefson, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Chief Judge

Michael Sean Harrison appeals from his judgment of conviction for possession of a controlled substance. Specifically, Harrison alleges that the district court erred in denying Harrison's motion to suppress. For the reasons set forth below, we reverse the order denying the motion to suppress, vacate the judgment of conviction, and remand.

At five o'clock in the morning, an officer was dispatched to a retail store. The officer was told that a female had taken an item of clothing and left the store without paying for the item. The officer was advised that the female was in the parking lot and was provided a description of the vehicle in which the female was sitting. The officer was also told that the female was accompanied by a male accomplice, who was between the ages of thirty and thirty-five and was wearing a black, hooded sweatshirt and black shorts. The store manager

1

explained that she suspected the male was also preparing to take items without paying. When the officer arrived, he located the vehicle and saw a female sitting on the passenger side floor making erratic movements. Almost simultaneously, the officer saw a male in a black, hooded sweatshirt and black shorts leaving the store, carrying bags of merchandise, and walking toward the vehicle in which the female was sitting. The officer confronted the male, who was identified as Harrison. The officer explained that he had received a report that the female and Harrison had been stealing items from the store. The officer told Harrison to set his shopping bags on the ground and step to the side. The officer then told Harrison, "I'm gonna make sure you don't have any weapons, ok?" Harrison responded, "Alright."[1] Harrison tried several times to turn from the officer to talk to the female. The officer placed handcuffs on Harrison and informed him that he was only being detained and was not under arrest. During a pat-down search, the officer felt several objects in Harrison's pockets and the following exchange occurred:

> Officer: What's in your pocket here?
> Harrison: Change and stuff like that.
> Officer: K. You mind if I check? Make sure there is no stolen merchandise or anything?
> Harrison: Yeah, man. Fine.

One of the items removed from Harrison's pocket was a small plastic bag containing heroin. Harrison was charged with possession of a controlled substance. Harrison filed a motion to suppress, arguing that he was illegally seized and searched by the officer. The district court denied Harrison's motion to suppress. Harrison pled guilty to possession of a controlled substance. Harrison appeals.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*,

---

[1] The audio from the incident is somewhat unclear. It sounds as if Harrison said "Alright, Bud," or "Alright, Fine."

127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Harrison alleges that he was illegally stopped and frisked by the officer and, therefore, the district court erred in denying his motion to suppress. A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999). In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court created a stop-and-frisk exception to the Fourth Amendment warrant requirement. The stop and the frisk constitute two independent actions, each requiring a distinct and separate justification. *State v. Babb*, 133 Idaho 890, 892, 994 P.2d 633, 635 (Ct. App. 2000); *State v. Fleenor*, 133 Idaho 552, 556, 989 P.2d 784, 788 (Ct. App. 1999).

The stop is justified if there is a reasonable and articulable suspicion that the individual has committed or is about to commit a crime. *Florida v. Royer*, 460 U.S. 491 (1983); *Terry*, 392 U.S. at 30; *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998); *Ferreira*, 133 Idaho at 479, 988 P.2d at 705. However, merely because there are reasonable grounds to justify a lawful investigatory stop, such grounds do not automatically justify a frisk for weapons. *Babb*, 133 Idaho at 892, 994 P.2d at 635. An officer may frisk an individual if the officer can point to specific and articulable facts that would lead a reasonably prudent person to believe that the individual with whom the officer is dealing may be armed and presently dangerous and nothing in the initial stages of the encounter serves to dispel this belief. *Terry*, 392 U.S. at 27; *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787. In our analysis of a frisk, we look to the facts known to the officer on the scene and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances. *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787.

Here, the officer received information from the store manager that the female had stolen clothing and that the store manager suspected Harrison was also preparing to steal items from the store. Based upon this information, the officer had reasonable and articulable suspicion that Harrison was involved in stealing items from the store and was justified in stopping Harrison to investigate the alleged crime.

The next issue is whether Harrison was illegally searched. Harrison alleges that there were no specific and articulable facts that would lead a reasonably prudent person to believe that he may have been armed and dangerous. Further, the officer testified that he had no information that Harrison was violent, armed, or dangerous. Thus, according to Harrison, the officer was not justified in performing a *Terry* frisk of Harrison. We agree.

After being stopped, the officer told Harrison, "I'm gonna make sure you don't have any weapons, ok?" and Harrison responded "Alright." The state argues that the officer asked to search Harrison and that Harrison's response, "Alright," provided consent for the search. A search may be rendered reasonable by an individual's consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998). Consent must be unequivocal and specific and freely and intelligently given. *United States v. Shaibu*, 920 F.2d 1423, 1426 (9th Cir. 1990). The state must provide evidence that the defendant has waived his or her rights. *State v. Staatz*, 132 Idaho 693, 695, 978 P.2d 881, 883 (Ct. App. 1999). In the event that consent is inferred from the facts and circumstances, the state's burden of proving consent is the "heaviest." *Id*.

Here, the district court did not address the question of whether Harrison consented to a search. However, it is clear from the record that Harrison did not consent. At the hearing on Harrison's motion to suppress, the officer testified that Harrison never agreed to allow the officer to search him. Further, viewing the officer's and Harrison's statements in the context of the entire interaction, it is clear that the officer was not asking permission to search Harrison. The officer told Harrison to walk toward the officer, place Harrison's bags on the ground, walk to the side of the police vehicle, and turn around. In context, it is clear that the officer was not seeking Harrison's permission to search for weapons, but was explaining what was happening and was preparing Harrison for the search the officer intended to conduct. Accordingly, we hold that Harrison did not provide consent to be searched by the officer. Because the state has not shown that the search of Harrison was a valid *Terry* search, was consensual or fell within another exception to the warrant requirement, it did not meet its burden of proving that the warrantless search was reasonable.

The final question is whether the illegal search of Harrison for weapons requires suppression of the evidence. The district court held that there was no nexus between the

4

pat-down search for weapons and the officer's request to remove items from Harrison's pockets seeking stolen merchandise. The district court explained that the officer asking to empty Harrison's pockets, along with Harrison's consent, led to the discovery of the controlled substance. It appears from the district court's oral ruling that it believed the pat search for weapons was an independent event followed by another independent event--the request to remove items from Harrison's pockets to search for stolen merchandise. The record does not support the district court's conclusion. After directing Harrison to the side of the police vehicle, the officer began searching Harrison, stopped to place handcuffs on Harrison, moved Harrison to the front of the police vehicle (in view of the camera), and then continued the pat search for weapons. While conducting the pat search for weapons, the officer felt small items in Harrison's pocket, asked Harrison what items were in his pocket, and sought permission to remove the items in order to ensure they were not stolen merchandise. Contrary to the district court's holding, the discovery of the controlled substance in Harrison's pockets was directly connected to the illegal search of Harrison. The officer testified that, "during the pat search, I could feel several objects in his pockets . . . and so I asked him if I could remove the items from his pockets." Only because the officer felt items in Harrison's pockets during the search did the officer know Harrison had items in his pockets and ask permission to remove the items. Thus, we hold that the discovery of controlled substances in Harrison's possession was the result of the officer's illegal search of Harrison. Accordingly, the district court erred in denying Harrison's motion to suppress.

Harrison has not shown that he was illegally stopped by the officer. However, Harrison has shown that he was illegally searched. Thus, the district court erred in denying Harrison's motion to suppress. Accordingly, we reverse the order denying the motion to suppress, vacate the judgment of conviction, and remand.

Judge GRATTON and Judge HUSKEY, **CONCUR**.

5